Matter of Jacob WW. v Joy XX. (2020 NY Slip Op 01209)





Matter of Jacob WW. v Joy XX.


2020 NY Slip Op 01209


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

526231 528151

[*1]In the Matter of Jacob WW., Appellant,
v
Joy XX., Respondent. Attorneys for the Children, Appellants. (And Another Related Proceeding.)

Calendar Date: January 14, 2020

Before: Clark, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Garufi Law PC, Binghamton (Alena Van Tull of counsel), for Jacob WW., appellant.
Christopher Hammond, Cooperstown, attorney for the child, appellant.
Larisa Obolensky, Delhi, attorney for the child, appellant.
Christine Nicolella, Delanson, attorney for the child, appellant.
Jehed Diamond, Delhi, for respondent.



Pritzker, J.
Appeals (1) from an order of the Family Court of Delaware County (Rosa, J.), entered January 9, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation, and (2) from an order of said court, entered May 25, 2018, which denied petitioner's motion to renew.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of three children (born in 2003, 2006 and 2008). Pursuant to a stipulation of settlement entered in 2011 — which was later incorporated, but not merged, into the parties' 2014 judgment of divorce — the mother had sole legal and residential custody of the children, with the father having a schedule of parenting time. The stipulation provided, among other things, that the father would have parenting time every weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. In May 2017, the father commenced a modification proceeding, requesting primary residential custody of the children. Thereafter, in July 2017, the father filed an enforcement of visitation petition alleging that the mother "took" the children during his parenting time without his consent.
At the commencement of the fact-finding hearing, the mother moved to dismiss the father's enforcement petition and, at the close of the father's case, the mother moved to dismiss the modification petition based on his failure to establish a change in circumstances. Family Court reserved decision on each motion. Thereafter, the court held a Lincoln hearing with each child. In January 2018, the court granted the mother's motion to dismiss the enforcement petition and denied the mother's motion to dismiss the father's modification petition, finding that the father demonstrated a change in circumstances. The court thereafter awarded the parties joint legal custody with the mother retaining primary residential custody and the father getting parenting time for an additional three hours every weekend — from Friday at 3:00 p.m. to Sunday at 6:00 p.m. — and an additional week of vacation. Thereafter, in April 2018, pursuant to CPLR 2221 (e), the father moved for leave to renew. After opposition by the mother, Family Court denied the motion. The attorneys for the children and the father appeal from the January 2018 order, and the father additionally appeals from the May 2018 order.
"A parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis" (Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019] [internal quotation marks, brackets and citations omitted], lvs denied 34 NY3d 905, 906 [2019]; see Matter of Richard L. v Kristen M., 174 AD3d 968, 969 [2019]). "[A]ssuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child[ren]'s continued best interests" (Matter of Brandon E. v Kim E., 167 AD3d 1293, 1294 [2018] [internal quotation marks and citation omitted]). In determining the children's best interests, the court "must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[ren]'s life, each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1421 [2018]; see Matter of Kanya J. v Christopher K., 175 AD3d at 762). "Although the child[ren]'s desires are considered as part of the best interests analysis, they are but one factor to be considered and should not be considered determinative and the potential for influence having been exerted on the child[ren] must also be considered" (Matter of Manell v Manell, 146 AD3d 1107, 1108-1109 [2017] [internal quotation marks, ellipsis, brackets and citations omitted]; see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019]). The court is afforded broad discretion in determining the best interests of the children, "and its determination will not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1557 [2019]; see Matter of Nicole TT. v David UU., 174 AD3d 1168, 1169 [2019]). Inasmuch as Family Court found that the father demonstrated a change in circumstances sufficient to warrant an analysis of the best interests of the children, the only issue remaining is whether there is a sound and substantial basis in the record supporting the court's determination that it was in the children's best interests to grant joint legal custody, with the mother having primary residential custody. The father and the attorneys for the children contend that there is not. We disagree.
Testimony established that the father lives in a four-bedroom, three-bathroom house situated on 100 acres and that he has lived at this address for 15 years. Many members of the father's family live nearby. The father resides with his wife, her two daughters and their three-year-old son. The father owns his own logging business and, as such, has great flexibility with the hours he works, allowing him to actively participate in the children's lives and exercise his parenting time as often as he can. The father testified that his communication with the mother is "pretty good," and that both parties equally schedule and attend medical appointments for the children. The father alleged that the children were always at the maternal grandparents' home during the mother's parenting time and that, prior to filing the modification petition, the mother permitted the children to visit the father's home at will; however, after the petition was filed, the mother reverted to the terms of the original order. The father admitted to discussing the filing of the modification petition with the children, as well as the associated proceedings, which the father conceded was "probably" not appropriate. The father's wife testified, corroborating the father's testimony and explaining that she has a "perfect" relationship with the children.
The mother testified that she resides in a three-bedroom, one-bathroom apartment and that, prior to renting this apartment, she and the children temporarily lived with her parents. Prior to that, the mother resided with a paramour for approximately three years and, at the time of the prior order, she resided with her parents. The mother testified that she works Monday through Friday, 7:00 a.m. to 9:00 a.m. and 4:00 p.m. to 6:00 p.m., and on weekends from 10:00 a.m. to 3:00 p.m., as well as additional weekend hours. The mother testified that in the mornings, she drives the children to their maternal grandparents' house and the maternal grandmother "makes sure they get to school." Regarding the children's after-school routine, the children walk from the school to their maternal grandparents' home; the mother waits there for the children and then transports them to various practices or friends' houses. The mother testified that once she returns from work, she and the children will either remain at the maternal grandparents' house for dinner or return to her home. The mother testified similarly to the father in that the parties communicate well regarding the children's wishes and change parenting time accordingly. The mother denied restricting the father's parenting time since the filing of his petition. Despite prior instances of domestic issues between the parties, which the father admitted during cross-examination, the mother testified that she does not consider the father a threat to the children. The mother testified that the current visitation schedule was "good" and that she did not object to the children spending additional time with the father, as long as the children are not solely with the father's wife. When asked if the mother believed it would be better for the children to be with their father than their maternal grandparents between 4:00 p.m. and 6:00 p.m. on weekdays, the mother testified, "Yes and no."
The maternal grandfather testified, largely corroborating the mother's testimony. The grandfather also testified that the children "act out" when they come back on Sundays and that the children do not listen. Specifically, in that regard, the change in behavior pertains to the manner in which the children speak to the mother and the grandparents. The grandfather testified that the children hate the mother and that, when they speak to her in expletives, she responds in a nice, loving voice. The maternal grandmother testified, corroborating much of the grandfather's testimony, including that the children can be "rude [and] abrupt" when they return from parenting time with their father. The mother of one of the children's friends testified that one of the children comes to her home after school each day between 5:00 p.m. and 7:00 p.m. and that this schedule has been in place since the beginning of the school year. The mother's boyfriend testified that, after the proceedings were commenced, the children became mean and were not as polite and friendly as they had previously been. He also testified that, prior to the filing of the petition, there was a lot of flexibility between the parties regarding parenting time, but that after the mother received the modification petition in the mail, everything changed; neither party "would do anything for each other."
Although a very close call,[FN1] Family Court's order of joint legal custody with primary residential custody to the mother is supported by a sound and substantial basis in the record (see Matter of Nicole TT. v David UU., 174 AD3d at 1169). At present, each parent maintains a stable home environment for the children, supports the children's education and contributes to the children's participation in extracurricular activities. Although the record establishes that the children spend a substantial amount of time at the maternal grandparents' house, the record does not indicate that the mother has abandoned her parental responsibilities (compare Matter of Billets v Bush, 63 AD3d 1203, 1204 [2009]). Rather, on account of the mother's work schedule, the children spend approximately one hour at the maternal grandparents' house before school, spend time with the mother in the afternoons after school, participate in various activities outside of the home and have dinner with the mother each night. On the other hand, the father testified that he attempts to make himself available to the children whenever possible, and the father's wife testified that when the children visited during the week, she often spent time with them without the father. As the court's factual findings and credibility assessments are entitled to deference, there is a sound and substantial basis in the record for the custodial arrangement imposed by the court (see Matter of Melissa MM. v Melody NN., 169 AD3d 1280, 1283 [2019]).
We now briefly turn to the father's remaining contentions. First, we discern no error in Family Court precluding testimony regarding hearsay statements of the children. Although the father contends that these statements were admissible to prove abuse or neglect by the mother and/or maternal grandparents, there were not any allegations of abuse or neglect in the father's custody petition (see Family Ct Act § 1046 [a] [vi]; Cobane v Cobane, 57 AD3d 1320, 1321 [2008], lv denied 12 NY3d 706 [2009]). Further, when the father sought to admit these statements, the court asked the father whether he had any corroboration, and the father conceded that he did not at that time. Accordingly, even if these hearsay statements were admissible to prove abuse or neglect, the father failed to produce any corroborative evidence and, as such, the court did not err in excluding this testimony (see Matter of Leighann W. v Thomas X., 141 AD3d 876, 878-879 [2016]; compare Cobane v Cobane, 57 AD3d at 1321). Finally, we find the father's remaining contention, that Family Court erred in denying his motion for leave to renew, lacking in merit (see Scott v Thayer, 160 AD3d 1175, 1177 [2018]; Howard v Stanger, 122 AD3d 1121, 1123 [2014], lv dismissed 24 NY3d 1210 [2015]).
Clark, J.P., Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: As to the oldest child, who was 14 years old at the time of these proceedings, this is an even closer call. We note that it does not appear from the decision that Family Court expressly considered this child's wishes as to where he wanted to live (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Matter of Newton v McFarlane, 174 AD3d 67, 83 [2019]).